No. 22-50223

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JERMAINE WRIGHT,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of California
D.C. No. 5:17-cr-00229-JGB-01
The Honorable Jesus G. Bernal, Presiding.

---

## APPELLANT'S OPENING BRIEF

---

DAVID J. KALOYANIDES SBN 160368
DAVID J.P. KALOYANIDES
A Professional Law Corporation
111 W. Ocean Blvd., Suite 400
Long Beach, CA 90802
(213) 623-8120
djpk@rt2counsel.com
*Attorney for Defendant-Appellant*
*Jermaine Wright*

## TABLE OF CONTENTS

Table of Contents ........................................................................................1

Table of Authorities ...................................................................................3

I.    Introduction ...................................................................................5

II.    Issues Presented for Review ........................................................7

    A.    Whether the district court's admission of the hearsay portions of the photographs depicting the items inside the restaurant was an abuse of discretion that prejudiced Mr. Wright ..............................7

    B.    Whether Jury Instruction 18 impermissibly invaded the province of the jury by directing the jury to find the jurisdictional element of the charged offense. ....................................7

III.    Statement of the Case ....................................................................7

    1.    Statement of jurisdiction ......................................................7

    2.    Custody Status of Defendant-Appellant ..............................8

    3.    Procedural history ...............................................................8

IV.    Statement of the Facts ...................................................................9

V.    Argument ......................................................................................15

    A.    The district court abused its discretion by permitting the government to introduce hearsay statements of the labels of the items in the restaurant. ....................................15

    1.    Standard of review ............................................................15

    2.    The government's theories of admissibility .......................16

    B.    The district court erred by giving Instruction 18 because it invaded the province of the jury on an essential element of the arson charge. ....................................18

1.  Standard of Review ................................................................ 18

2.  The challenged instruction. .................................................. 18

VI.  Conclusion ................................................................................. 21

Certificate of Related Cases .................................................................. 22

Certificate of Compliance ..................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Carella v. California*,

    491 U.S. 263 (1989) ........................................................................ 19

*Francis v. Franklin*,

    471 U.S. 307, 105 S.Ct. 1965 (1985) ....................................... 19

*In Re Winship*,

    397 U.S. 358, 90 S.Ct. 1068 (1970). ........................................ 19

*Katzenbach v. McClung*,

    379 U.S. 294, 85 S.Ct. 377 (1964) ........................................... 20

*Kawashima v. Mukasey*,

    530 F.3d 1111 (9th Cir. 2008), .................................................. 17

*Sandstrom v. Montana*,

    442 U.S. 510, 99 S.Ct. 2450 (1979) ......................................... 19

*United States v. Alvarez*,

    972 F.2d 1000 (9th Cir. 1992), .................................................. 17

*United States v. Frega*,

    179 F.3d 793 (9th Cir. 1999) ..................................................... 18

*United States v. Hinkson*,

    585 F.3d 1247 (9th Cir. 2009) ................................................... 15

*United States v. Hofus*,

    598 F.3d 1171 (9th Cir. 2010). .................................................. 18

*United States v. Lopez*,

    514 U.S. 549, 115 S.Ct. 1624 (1995), ................................ 19, 20

*United States v. Ortega,*

    203 F.3d 675 (9th Cir. 2000). ..................................................................... 18

*United States v. Serang,*

    156 F.3d 910 (9th Cir. 1998) .............................................................. 20, 21

*United States v. Snow,*

    517 F.2d 441 (9th Cir. 1975) .................................................................. 16

*United States v. Stapleton,*

    293 F.3d 1111 (9th Cir. 2002). .................................................................. 18

*United States v. Torres,*

    794 F.3d 1063 (9th Cir. 2015 .................................................................. 15

## Statutes

18 U.S.C. § 2(b) ......................................................................................... 6, 7

18 U.S.C. § 666 ........................................................................................... 6, 7

18 U.S.C. § 844(i) ............................................................................... 6, 7, 19, 20

28 U.S.C. § 1291 ............................................................................................. 6

18 U.S.C. § 3231 ............................................................................................. 6

## I.    INTRODUCTION

Appellant Jermaine Wright was a duly elected city council member for the City of Adelanto, California. During his tenure, the City of Adelanto was one of the California communities developing regulations for businesses engaged in growing, distributing, and selling of marijuana under California's laws that had legalized the use of marijuana both for medicinal and recreational purposes. He was also a businessman who ran several businesses in Adelanto relating to food services. He was a shareholder in the restaurant Fat Boyz Grill, Inc., as well as running his own catering service.

In November of 2017, Mr. Wright was charged with bribery arising out of his position as a city council member involved decisions relating to marijuana businesses seeking to operate in Adelanto. In the same Indictment, Mr. Wright was charged with attempted arson of his restaurant.

This appeal focuses on two narrow but related issues involving Mr. Wright's arson conviction. One of the elements of the arson charge required the government to prove interstate nexus. Specifically, the government bore the burden of proving that the restaurant was used in interstate or foreign commerce or was used in an activity affecting interstate commerce. The government sought, and eventually was permitted, to introduce into evidence photographs of various items found inside the restaurant. On the first day of trial, Mr. Wright objected to the photographs insofar as they contained labels purporting to identify the contents of the boxes as well as the

names and addresses of the companies that sold or manufactured the items. (1-ER-17-19). Mr. Wright objected on the grounds that the labels and markings were hearsay as the government was relying on the labels for their truth to establish not only the contents but their place of origin to meet the interstate nexus element of the charge. The district court overruled the objection.

At the close of the case, the government requested Supplemental Proposed Instruction No. 1, (Jury Instruction 18) which in essence, created a presumption that the interstate nexus element had been met. (1-ER-10-11; 13-14). Mr. Wright filed a written objection to this instruction as taking a necessary finding of fact out of the hands of the jury. (1-ER-40-44). The district court overruled Mr. Wrights objection and gave the requested supplemental instruction. (1-ER-10-11; 13-14).

Jury Instruction 18 impermissibly created a presumption that the jurisdictional element had been met, taking that element out of the hand of the jury. The improper instruction along with the admission of the hearsay evidence prejudiced Mr. Wright by essentially eliminating the need for the government to prove the jurisdictional element on the arson count.

## II.    ISSUES PRESENTED FOR REVIEW

**A.** Whether the district court's admission of the hearsay portions of the photographs depicting the items inside the restaurant was an abuse of discretion that prejudiced Mr. Wright.

**B.** Whether Jury Instruction 18 impermissibly invaded the province of the jury by directing the jury to find the jurisdictional element of the charged offense.

## III.    STATEMENT OF THE CASE

### 1.   Statement of jurisdiction

Mr. Wright was charged with violating 18 U.S.C. § 666(a)(1)(B), Bribery of Programs Receiving Federal Funds, and 18 U.S.C. 844(i), Attempted Arson of a Building Affecting Interstate Commerce, and 18 U.S.C. §2(b), Causing an Act to be Done. (2-ER-22-24). Mr. Wright was convicted on both counts. (1-ER-2-5). Mr. Wright was sentenced to 60 months. (5-ER-928-929). On 11 October 2022, Mr. Wright filed a timely Notice of Appeal. (5-ER-934). The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

## 2. Custody Status of Defendant-Appellant

Mr. Wright is currently incarcerated at the Federal Correctional Institution FCI Bastrop, in Bastrop Texas, serving his sentence of 60-month imprisonment in this case, with a projected release date of 4 March 2026.

## 3. Procedural history

On 15 November 2017, the Grand Jury returned an Indictment charging Mr. Wright with one count of Bribery of Programs Receiving Federal Funds (18 U.S.C. § 666(a)(1)(B)) and one count of Attempted Arson of a Building Affecting Interstate Commerce (18 U.S.C. § 844(i)) and Causing an Act to be Done (18 U.S.C. §2(b)). (2-ER-22-24). After a six-day trial, the jury found Mr. Wright guilty of both charges.[1] (1-ER-2-4).

Mr. Wright was sentenced to a total of 60 months of imprisonment, 60 months on Count 1 (the bribery count) and 60 months on Count 2 (the attempted arson), which was the mandatory minimum sentence under the statute, both sentences to run

---

[1] The jury made a special finding on Count 1 that in connection with the bribery, Mr. Wright intended to be influenced or rewarded in connection with a vote to expand the marijuana business zone and curtailment of Code Enforcement. The special findings are not relevant to this appeal as Mr. Wright is not challenging his conviction on Count 1.

concurrently. (5-ER-928-29). On 11 October 2022, Mr. Wright filed his Notice of Appeal. (5-ER-934).

## IV.   STATEMENT OF THE FACTS

The trial combined two distinct charges factually unrelated but involving several of the same witnesses. The government first presented evidence focusing on the bribery charge. It then transitioned to evidence relating primarily on the attempted arson. Most of the government's evidence consisted of undercover and other surreptitiously recorded conversations, telephone calls, and meetings with Mr. Wright. Many of these interactions were also video recorded. The key witness in the government's case-in-chief was the confidential human source, Robert Andrade.

Mr. Andrade testified that he was an air conditioning and heating contractor in the city of Adelanto who regularly followed politics in the city and regularly attended city council meetings. (3-ER-257). Through this he became familiar with several of the city council members. (*Id.*) Mr. Andrade testified that he had been a paid informant in prior investigations for the Bureau of Alcohol, Tobacco, Firearms and Explosives— the ATF. (3-ER-259-60; 284-85).

Mr. Andrade had been approached by the FBI to gather information regarding possible bribery allegations involving members of the Adelanto City Council. (3-ER-259). He later introduced undercover agents to Mr. Wright and recorded

conversations he had with Mr. Wright. (3-ER-259-60). Mr. Andrade introduced an undercover FBI agent to Mr. Wright. The agent was posing as a marijuana businessman looking to secure a permit to conduct a marijuana business in Adelanto. (3-ER-262). The parties stipulated to the testimony of the undercover agent setting forth the pretense he used as a marijuana businessman and that he was seeking to purchase property for his business and then solicit the City Council to change the zoning so the business would be in the proper marijuana business zone. (2-ER-25-28). The stipulated testimony authenticated the undercover recordings of meetings with Mr. Wright. Through the testimony of the case agent, FBI Special Agent Kevin Boles, the various recordings of conversations and meetings between Robert Andrade, the undercover agent and Mr. Wright were presented to the jury. One of the recordings involved a meeting where the undercover agent paid Mr. Wright $10,000 to secure the zoning change and any help in preventing Code Enforcement from preventing the business from operating. (3-ER-402, 482-83).

Along with the evidence relating to the bribery count, both Robert Andrade and Special Agent Boles testified regarding the attempted arson charge. Mr. Andrade testified that Mr. Wright approached him stating he wanted to burn down his restaurant and that he wanted Andrade's help so he could collect $300,000 in insurance proceeds. (3-ER-264). Mr. Andrade brought this to Special Agent Boles's attention, and Boles proceeded to expand the investigation to include the potential

arson scheme. (3-ER-386). Mr. Andrade told Mr. Wright that he would try to find someone who could help him with the arson. (3-ER-263-64). Another undercover agent was subsequently introduced as the potential arsonist. This undercover agent met with Mr. Wright while Special Agent Boles conducted surveillance of the meeting. (3-ER-394-95).

The undercover agent posing as the potential arsonist also testified. The agent testified that he spoke with Mr. Wright and later met with him. He discussed with Mr. Wright the timing of the arson so that Mr. Wright would not be in town when it took place. (4-ER-642, 646). They also discussed the details of the arson, the source and the extent of the fire and other damage as well as how to make the fire look like an accident. (4-ER-646-48, 651). The agent met with Mr. Wright to inspect the property and discuss preparations for the arson. (4-ER-654-55). The agent testified that afterwards, Mr. Wright gave him a wristband with a zipper pouch containing $1500 in cash. (4-ER-655-56, 661-62).

The government's evidence relating to the interstate nexus element for the arson count included the parties' stipulation that Mr. Wright rented the location where he operated his restaurant, photographs of items inside the restaurant, as well as testimony of Special Agent Boles and Special Agent Steven Gale, who participated in the searched the restaurant premises pursuant to a search warrant. Special Agent Gale was tasked as the photographer of the search. (4-ER-530).

Special Agent Gale testified concerning the proximity of the restaurant to U.S. Highway 395, that Highway 395 proceeds to Carson City, Nevada, and that Highway 395 had a junction with Interstate 15, which led to Las Vegas, Nevada. (4-ER-593-95). He also testified concerning the photographs he took of the restaurant and its contents, Government Exhibits 56-90, among others. The government proceeded to solicit testimony concerning the writing on several of the items in the restaurant: boxes (4-ER-566, 575-78); bottles (4-ER-568); equipment (4-ER-573, 580). Special Agent Gale testified that based on the labels of these items, he had seen some of the products in other states, specifically in Texas and Utah. (4-ER-569). He also testified about food products he found in the walk-in freezer area of the restaurant, identifying the contents and company name and location based on the labels. (4-ER-575-576).

Gale's testimony, along with the exhibits that were the photographs of the items found in the restaurant, were the subject of Mr. Wright's objection prior to trial. Mr. Wright's objection was specific: the writings on the items, the labels and other information concerning the contents, the name and location of the manufacturer or distributer of the item should be excluded as hearsay because the government's sole purpose for introducing the writings was for their truth. This became apparent during the cross-examination of Special Agent Gale where he testified that none of the items that were identified as food products were seized. (4-ER-604-05). He also testified that he did not do any investigation to confirm the location of the companies

identified on the labels, (4-ER-606-607), that he did not do any investigation to determine what products were manufactured or grown in California (4-ER-607-09), and that he never opened any of the labeled boxes or containers to confirm their contents. (4-ER-609-12). He admitted that he was relying entirely on what was stated on the labels. (4-ER-610). As to the equipment in the restaurant, he admitted that he did not know how long the equipment had been there, when it was installed, when it had been purchased or even if it worked. (4-ER-613-14). Finally, Special Agent Gale testified about invoices recovered at the restaurant. He admitted that he did not recall seeing any of the invoices' specific items in the restaurant. (4-ER-613-18).

Mr. Wright testified in his own defense.[2] He explained that he was a shareholder in the corporation, Fat Boyz Grill, Incorporated, having taken over a prior restaurant at the same location. (5-ER-702-04). He also explained that he had other businesses, specifically a catering business that was separate from the restaurant. (5-ER-704-05). When he purchased the prior restaurant's business, it included all the equipment already installed. (5-ER-706-07).

Mr. Wright testified that one of the other shareholders in the restaurant had made a comment in the presence of Mr. Wright and Mr. Andrade that the

---

[2] Although Mr. Wright testified about both charges, as the issues on appeal do not involve the bribery charge, the summary of his testimony is limited to the attempted arson count.

shareholders would make more money burning down the restaurant than it was making as a business. (5-ER-737). He testified that it was Andrade who then raised the idea that he knew people who would "make it happen." (5-ER-738-39). He testified that initially he believed the undercover agent was in fact a contractor who was going to help with some repairs in the restaurant. (5-ER-761-62). It was during the meeting with the undercover agent Mr. Wright testified he realized he was there in connection with the arson. (5-ER-763-64). He admitted he paid the $1500 but testified that he did not believe it was for a real arson because the price was too low. (5-ER-767-68).

During cross-examination, Mr. Wright admitted that the restaurant had several types of food products and other items similar to those found during the execution of the search warrant. (5-ER-793-95) He did not identify the suppliers or manufacturers of any of the items.

The government requested a supplement jury instruction, Instruction 19 related to the interstate commerce nexus. (1-ER-38). The proposed instruction read:

A building is "used in interstate commerce or in an activity affecting interstate commerce" if it contains business or residential rental units and is used as a rental property.

A functioning restaurant is commercial property; and as a commercial enterprise, it has a substantial effect on interstate commerce.

14

All business property has a substantial effect on interstate commerce.

Mr. Wright objected to the instruction as invading the province of the jury, that it mandated the jury find the government had met an essential element of the offense. (1-ER-14; 2-ER-40-44; 5-ER-829). The district court overruled Mr. Wright's objection and gave the proposed instruction. In the final version of the jury instructions as read, the instruction was numbered as Instruction 18. (1-ER-13-14; 5-ER-843).

## V. ARGUMENT

### A. The district court abused its discretion by permitting the government to introduce hearsay statements of the labels of the items in the restaurant.

#### 1. Standard of review

While the construction or interpretation of the Federal Rules of Evidence are reviewed by this Court de novo, the admission of evidence is reviewed for abuse of discretion. *See United States v. Torres*, 794 F.3d 1063, 1059 (9th Cir. 2015). Abuse of discretion is determined first by a de novo determination whether the district court identified the correct legal rule to apply to the requested relief. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the district court applied

the correct rule, then the reviewing court must determine whether the district court's application of that rule was: (i) illogical; (ii) implausible; or (iii) without support in inferences drawn from the record.

### 2. The government's theories of admissibility

The government relied upon two theories for which the information on the boxes and labels on the items should be admitted either as non-hearsay or as falling within the "catch-all" exception to the hearsay rule. The government argued that the text of labels and printing on boxes of purported food products and other paper products found in the restaurant was admissible as non-hearsay under the mechanical trace theory.

The mechanical trace theory makes certain specific information non-hearsay because it does not constitute a statement for which its truth is intended to be inferred. *See United States v. Snow*, 517 F.2d 441, 443 (9th Cir. 1975). In *Snow*, the Court held that red tape with defendant's name on it, and which was affixed to a briefcase, was not hearsay but merely circumstantial evidence of ownership. *See id.* In *Snow*, the Court provided other examples of what would fall under the mechanical trace theory: the label on a uniform to prove employment by the person wearing it, the name on a truck or a dog collar to show ownership. *See id.*, at 444.

In *United States v. Alvarez*, 972 F.2d 1000 (9th Cir. 1992), *overruled on other grounds by Kawashima v. Mukasey*, 530 F.3d 1111, 1116 (9th Cir. 2008), upon which the government relied, and upon which the district court appears to have agreed in making its ruling, it was the inscription on a firearm indicating origin of manufacture that was held to be merely a mechanical trace and not an assertion for its truth under Rule 801(c) of the Federal Rules of Evidence. *See Alvarez*, 972 F.2d at 1004.

The labels and textual information on the packaging of the items in the restaurant are distinct in character from the type of inscriptions that fall within the mechanical trace theory. The government was not introducing the content of the labels as circumstantial evidence of ownership or place of manufacture as might be appropriate under the mechanical trace theory. To the contrary, the government used the information to prove the content of the boxes and packages as well as the manufacturer or distributor along with the locations of those companies. None of the information on the labels identified ownership nor origin of the product itself. And as the government presented no evidence to corroborate the statements of the labels, there was no additional indicia of reliability that would support admitting these statements in the manner the government use them—for their truth. The admission of the labels and other marking was directly part of the government's proof of the interstate nexus element for the arson charge and, therefore, the admission of the contents of the labels directly prejudiced Mr. Wright.

**B. The district court erred by giving Instruction 18 because it invaded the province of the jury on an essential element of the arson charge.**

### 1. Standard of Review

Formulation of jury instructions are subject to an abuse of discretion standard. *See United States v. Ortega*, 203 F.3d 675, 684 (9th Cir. 2000). However, this Court reviews de novo whether an instruction misstates or omits an element of the charged offense. *See United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002). "The 'relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation.' *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999)." *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).

### 2. The challenged instruction.

Instruction 18, in essence, directed the jury to find the jurisdiction element of the arson charge. By stating that a functioning restaurant substantially affects interstate commerce, that rental property affects interstate commerce, and that all business property has a substantial effect on interstate commerce removes the interstate nexus element from the jury's consideration.

The government bears the burden of proving beyond a reasonable doubt each element of a charged offense. *See In Re Winship*, 397, U.S. 358, 364, 90 S.Ct. 1068

(1970). Any instruction that eliminates the burden of the government violates the
defendant's due process rights and "invade the truth-finding task assigned soley to
juries in criminal cases." *See Carella v. California*, 491 U.S. 263, 265 (1989) (citing *Francis
v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965 (1985) and *Sandstrom v. Montana*, 442 U.S. 510,
99 S.Ct. 2450 (1979)).

In determining the effect of a jury instruction, the Court must consider whether
the instruction creates a presumption and whether that presumption is mandatory. *See
id*. When an instruction does not inform the jurors that they have a choice or that they
might infer a conclusion but that the law presumes such a finding, "a reasonable juror
could easily have viewed such an instruction as mandatory." *See Sandstrom v. Montana*,
442 U.S. 510, 514-15 (1979) (citations omitted).

The nexus element in the instruction on Count 2 (Jury Instruction No. 17)
read:

> Second, at the time that the fire or explosion would have occurred, the real
> property was used in interstate or foreign commerce, or was used in an activity
> affecting interstate commerce.

The purpose of the interstate nexus element is to make an individualized
determination—a case-by-case inquiry—whether the entity or item in question affects
interstate commerce. In *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995), the
United States Supreme Court struck down the Gun-Free School Zones Act of 1990 as

exceeding Congress's authority to regulate Commerce among the states because the statute "neither regulates a commercial activity nor contains a requirement that the possession [of the firearm] be connected in any way to interstate commerce." *Id.* at 551. In *Lopez*, the Court stated that the jurisdictional element was necessary to "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *See id.*, at 561. The Court provided examples of where Congress had the authority to regulate activity because it substantially affected interstate commerce. Notably, the Court stated that this authority included regulation of "restaurants utilizing substantial interstate supplies". *See id.*, at 559-560 (citing *Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377 (1964) (ruling on constitutionality of Civil Rights Act regulating restaurants serving interstate travelers or where "a substantial portion of the food which it serves…has moved in commerce.")).

In arguing for Instruction 18, the government relied on *United States v. Serang*, 156 F.3d 910 (9th Cir. 1998). In Serang, the Court addressed three claims of error: that the federal arson statute (18 U.S.C. §844) was unconstitutional; that the evidence at trial was insufficient to sustain the verdict; and that the jury instruction did not require that the building in question "substantially" to affect interstate commerce. *See Serang*, at 913, 915 n.3. While *Serang* stated that restaurants are commercial properties and commercial properties substantially affect interstate commerce, the Court relied on

specific evidence of interstate commercial activity to support its conclusion. *See id* at 913.

There can be no question that a particular restaurant may affect interstate commerce, and substantially so. But to meet the interstate commerce element of 18 U.S.C. 844(i), the jury must make the determination whether the property in question—here Fat Boyz Grill, Inc.—was such a restaurant. Instruction 18 took that determination away from the jury by telling the jury that because Fat Boyz Grill, Inc. was a restaurant, the nexus element was satisfied.

Taking all the instructions together as a whole does not help to solve this error. Because Instruction 18 mandated a finding of the nexus element, the fact that all the other instructions taken as a whole set forth the jury's obligations properly does not correct the mandatory presumption that Instruction 18 created.

## VI.   CONCLUSION

For the foregoing reasons, the Court should vacate Mr. Wright's conviction on the attempted arson count, Count 2, and remand the matter for further proceedings.

DATED: 30 October 2023

s/ *David J. Kaloyanides*

DAVID J. KALOYANIDES

Attorney for Defendant-Appellant
Jermaine Wright

## CERTIFICATE OF RELATED CASES

There are no related cases of which counsel is aware.

DATED: 30 October 2023                    s/ *David J. Kaloyanides*

                                                    DAVID J. KALOYANIDES

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1, counsel certifies that this opening brief is proportionally spaced, has a typeface of 14 points or more, and contains approximately 4288 words.

DATED: 30 October 2023                    s/ *David J. Kaloyanides*
                                             DAVID J. KALOYANIDES